# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| THADDEUS BROOKS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18-cv-1593 |
| CITY OF ELMHURST, et al., | ) ) Honorable Charles R. Norgle |
| Defendants. | ) ) |

## ORDER

Defendants' motion for summary judgment [38] is granted. Civil case terminated.

## MEMORANDUM OPINION

Plaintiff has sued the City of Elmhurst, Illinois (the "City") and several members of its police department (Officers Zachary Carney and Jacob Beltran (together, the "Officers")) for violations of his civil rights for false arrest under 42 U.S.C. § 1983 (Count I), and for false arrest under Illinois law (Count II), malicious prosecution (Count III), and indemnification (Count IV). For the following reasoning, judgment is entered in Defendants' favor.

### I. BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits. Because Plaintiff is the nonmoving party, the Court construes the facts in the light most favorable to him. The following facts are undisputed unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." King v. Chapman, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

On March 28, 2017, the DuPage County Grand Jury indicted Plaintiff for the unlawful possession of a controlled substance in an amount of less than 15 grams in violation of 720 ILCS 570/402(c). The pertinent events that led to the indictment are detailed below.

In the early still dark morning, on March 5, 2017, around 4 a.m., Police Officer Carney was patrolling the streets of Elmhurst, Illinois in a marked police car. As he drove southbound on South Hampshire Avenue, he noticed a vehicle with its interior dome light on. The vehicle, a black Chevrolet Astro van, was parked in a driveway facing the street with the driver side front door open. Officer Carney ran the license plate which returned the van as registered to the Grace Central Outreach Church in Westchester, Illinois, several miles away.

Officer Carney got out of the police car and approached the van. He saw Plaintiff Thaddeus Brooks slumped over sitting in the driver's seat, unconscious. He called for back-up. Before approaching the van with back-up Officer Beltran, Officer Carney activated his dash camera inside the police car and recorded the interaction. The officers were armed by did not draw their weapons. Officer Carney attempted to wake Plaintiff out of his state of unconsciousness. He knocked on the windshield and called out to Plaintiff. Eventually, after four demonstrative knocks, Plaintiff came to and responded to the police officers. After Plaintiff awoke, Officer Carney was able to observe a lit cigarette in Plaintiff's hand.

Officer Carney identified himself as police officer and asked if everything was okay. After asking Plaintiff for identification, he asked Plaintiff to step out of the car, at which point he continued asking Plaintiff questions. At first, Plaintiff told Officer Carney that they were at his house, but later stated the house belonged to his brother, Pastor Darius Brooks, and that he was staying with his brother. Plaintiff told Officer Carney that he was tired from a long day of work, and had driven back from a church party. He added that the van belonged to the church in

Westchester. The van remained running after Plaintiff backed it into the driveway and slumped over the steering wheel.

Officer Carney asked Plaintiff if he had anything to drink.[1] Plaintiff denied having anything to drink. Plaintiff explained that he was tired due to it being a long day for him. Following a few questions about Plaintiff's drinking habits, to which Plaintiff responded he did not drink at all, Officer Carney saw that Plaintiff's pupils were pin-point in size and constricted. He then asked for consent to examine Plaintiff's eyes; Plaintiff agreed.

Officer Carney administered the horizontal gaze nystagmus test, an assessment of a subject's involuntary movement of their eyeball used as a factor in determining intoxication.[2] Officer Carney held a pen in his hand and asked Plaintiff to use his eyes to follow it, but Plaintiff did not follow the pen when Officer Carney moved it; rather, he stared blankly at Officer Carney.

---

[1] The Court takes judicial notice, see, e.g., Limestone Dev. Corp. v. Vill. of Lemont, 473 F. Supp. 2d 858, 867 (N.D. Ill. 2007), that the Illinois Secretary of State publishes a fact book with includes statistics regarding DUI arrests in the state of Illinois. The Illinois DUI Fact Book 2019, cyberdriveillinois.com, https://www.cyberdriveillinois.com/publications/pdf_publications/dsd_a118.pdf. In 2017, the Secretary of State recorded the following statistics:

> • 330 people were killed in alcohol-related crashes, which was approximately 30 percent of the 1,090 total crash fatalities.
> • 27,046 DUI arrests were recorded by the Secretary of State's office.
> • 91 percent of all drivers arrested for DUI, who were eligible, lost their driving privileges.
> • 397 drivers under age 21 lost their driving privileges due to Zero Tolerance law violations.
> • 26 percent of those arrested for DUI were women, who represented 50 percent of all licensed drivers.
> • Males ages 21-24 had the highest DUI arrest rate (about 10 per 1,000 licensed drivers).
> • 86 percent of all drivers arrested for DUI are first offenders.

P. 10.

[2] "The 'horizontal gaze nystagmus' test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated 'the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct.' 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, pp. 8A–43, 8A–45 (1989). The 'walk and turn' test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine. The 'one leg stand' test requires the subject to stand on one leg with the other leg extended in the air for 30 seconds, while counting aloud from 1 to 30." Pennsylvania v. Muniz, 496 U.S. 582, 585 (1990).

Officer Carney stated, "You're not following the pen at all. See the pen? Following it all the way. Okay? You're not looking at the pen. It's right here."

Continuing the field sobriety test, Officer Carney asked if Plaintiff took any medications, to which he responded that he took high blood pressure medication and vitamins. Officer Carney then asked if Plaintiff had issues with his feet or legs. Plaintiff responded that he had had knee surgery and that he limps but should be able to walk a straight line. Officer Carney then demonstrated the walk and turn test, first walking heel-to-toe for nine steps, counting out loud each step, and keeping his hands to his side throughout the test.

The dashcam video shows that during this part of the test, Officer Carney observed Plaintiff unsuccessfully complete the test. Plaintiff missed the line while walking four times during this first attempt and four more times during his second attempt. Plaintiff also did not touch his heel to his toe on the first two steps of his second attempt. He did not follow instructions when he raised his arms over his head during the test, and he failed to count his steps out loud. Despite the instructions, he only took 8 steps instead of 9 and stopped walking after he turned around.

During the second part of the test, Officer Carney demonstrated how to perform the one leg stand test. Officer Carney again observed Plaintiff unable to perform this specific test. On his first attempt, Plaintiff was unable to maintain his balance and quickly placed his foot on the ground. During his second attempt, Plaintiff took off his shoes but was unable to keep his right leg raised for 2 to 3 seconds; hopped twice, and raised his arms before placing his right foot on the ground.

Officer Carney asked Plaintiff if he was willing to take a breath test to check if he had been drinking alcohol. Plaintiff responded, "Absolutely." Before taking the breath test, Plaintiff was asked several questions about any use of illegal substances. When asked, Plaintiff responded that

the last time he did "dope" was 8 years ago and that he has a history of substance abuse. He said he had previously used heroin, cocaine, and marijuana.

Plaintiff complied with the instructions given by Officer Carney during the breath test, which resulted in .000 BAC. Officer Carney again asked if Plaintiff had had anything to drink. He responded by explaining that he had a long day at work and that he was responsible for maintenance for the church, putting everything away, and locking up. At this point, Officer Carney voiced his concerns that Plaintiff was showing signs of impairment.

Plaintiff consented to a request to be searched and informed the officers that he had a pocket knife. After the search, Officer Beltran asked Plaintiff about a plastic "baggie" that he saw inside the center console. Plaintiff responded: "Vitamin C." Officers Carney and Beltran continued to ask Plaintiff questions related to verifying where he lives. Officer Carney stated that Plaintiff's ID showed he lived at a different address and the van was registered to a different address. The police officers and Plaintiff agreed to contact Plaintiff's brother, Pastor Darius Brooks, to confirm his identity.

Before speaking with Pastor Brooks, Officer Beltran asked for consent to search the plastic bag and the capsules contained within to verify that they were vitamins. He specified to Plaintiff that he was referring to the plastic bag in the center console, and Plaintiff acknowledged by stating, "You mean the vitamins?" Officer Beltran specified, "The stuff I'm seeing in plain view, the capsules, that's what I'm concerned about. Are those actual vitamin C or is that heroin, because we need to verify." Ultimately, Plaintiff declined the request to search and stated that everything in the van belonged to his brother, except for the pack of cigarettes and the lighter.

Officer Carney asked Plaintiff if he believed he was okay to drive earlier. Plaintiff responded: "Absolutely." Then Officer Carney asked Plaintiff how he believed he did on the field sobriety test and shortly thereafter placed Plaintiff under arrest for DUI.

## II. LEGAL STANDARD

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 648 (7th Cir. 2011) ("A party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence."). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the

pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi v. Bd. of Educ. of City of Chicago, 647 F.3d 652, 662 (2011) (quoting Celotex Corp., 477 U.S. at 322).

## III. ANALYSIS

Plaintiff brings Section 1983 claims against Officers for false arrest and malicious prosecution in violation of the Fourth and Fourteenth Amendments. Plaintiff also brings a claim for indemnification under Illinois law. To prove a claim under Section 1983 against the officers, Plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). Officers do not dispute that they were acting under color of state law at the time of Plaintiff's arrest. Rather, they argue that they had probable cause to arrest Plaintiff.

Plaintiff argues that Officers did not have probable cause to arrest him, and that the Officers have submitted affidavits in which they demonstrate their consciousness of guilt, thus the officers are not entitled to qualified immunity. Defendants, however, respond by stating that the dashcam recording sufficiently establishes that there was probable cause to arrest, and that Plaintiff failed to address their arguments regarding his state law claims during summary judgment briefing, thus they are entitled to judgment. Regarding the issue of probable cause, the Defendants state that their interaction with Plaintiff began under the community caretaker role but as they became aware of more evidence of probable criminality, the interaction transitioned into an investigatory stop, and eventually an arrest. Defendants further state that each stage of the interaction was supported by

7

the requisite reasonable suspicion or probable cause. The Defendants, therefore, argue they are entitled to judgment in their favor on all claims.

In addition, Defendants address the issue of qualified immunity in their briefing; however, after reviewing the record and the parties' briefing, the Court has determined it unnecessary to analyze the issue of qualified immunity within the context of this case because Officers have established that they had probable cause to arrest.

This case turns on the issue of probable cause. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) (citing Potts v. City of Lafayette, 121 F.3d 1106, 1113 (7th Cir. 1997)); see also Sroga v. Weiglen, 649 F.3d 604, 608 (7th Cir. 2011) ("The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim."). "This is so even where the Officers allegedly acted upon a malicious motive." Id. (citing Simmons v. Pryor, 26 F.3d 650, 654 (7th Cir. 1993)). "Rather than trying to divine whether or not the officers acted with 'animus,'" the Court is "tasked with reviewing 'the facts as they would have appeared to a reasonable person in the position of the arresting officer.'" Fitzgerald v. Santoro, 707 F.3d 725, 732 (7th Cir. 2013) (quoting Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 457 (7th Cir. 2010)). "Courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." Wollin v. Gondert, 192 F.3d 616, 623 (7th Cir. 1999) (internal citation and quotations omitted).

"The test for probable cause is not reducible to 'precise definition or quantification.'" Florida v. Harris, 568 U.S. 237, 243–44 (2013) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). To establish probable cause, all that is "required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" Id. at 243 (internal citations omitted). Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Id. (citations omitted). "Probable cause is a practical, common-sense standard, involving the totality of the circumstances." United States v. Simon, ___ F.3d ___, 2019 WL 3940958 at *9 (7th Cir. Aug. 21, 2019).

Probable cause does not require the police "to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute. Rather, probable cause involves the exercise of judgment." Stokes v. Bd. of Educ., 599 F.3d 617, 622–23 (7th Cir. 2010) (citation omitted). Because probable cause is an objective concept, an officer's subjective belief as to the legal basis of the prosecution is irrelevant. See Graham v. Conner, 490 U.S. 386, 398 (1986) ("The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances...."); see also United States v. Muhammad, 120 F.3d 688, 696 (7th Cir. 1997) ("This 'flexible, commonsense' probable cause standard rests on whether a 'man of reasonable caution' would believe that the accused has committed a crime; it does not require that this 'belief be correct or more likely true than false.'"). Along with police offices, "[j]udicial evaluation of probable cause keep[s] in mind that probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." Maniscalco v. Simon, 712 F.3d 1139, 1143 (7th Cir. 2013) (quoting Whitlock v. Brown, 596 F.3d 406, 411 (7th Cir. 2010)).

While considering the totality of the circumstances, officers may "draw reasonable inferences based on training and experience in making the determination." United States v. Richards, 719 F.3d 746, 754 (7th Cir. 2013) (citing United States v. Williams, 627 F.3d 247, 251 (7th Cir. 2010)). Probable cause does not require information sufficient to support conviction or even enough to show a preponderance of the evidence; a "fair probability of discovering contraband" is enough. Id. "The reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more." United States v. Hicks, 531 F.3d 555, 560 (7th Cir. 2008) (citing Reynolds v. Jamison, 488 F.3d 756, 765 (7th Cir. 2007)).

"[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." Fox v. Hayes, 600 F.3d 819, 837 (7th Cir. 2010) (citing Devenpeck v. Alford, 543 U.S. 146, 153–56 (2004)). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck, 543 U.S. at 153; see also Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."); United States v. Douglass, 467 F.3d 621, 624 (7th Cir. 2006) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.") (citation omitted). And "a person's ability to explain away seemingly damning facts does not negate the existence of probable cause." Deng v. Sears, Roebuck & Co., 552 F.3d 574, 577 (7th Cir. 2009) (citing Whren v. United States, 517 U.S. 806 (1996)).

Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 761 (2006) (citing Williams v. Jaglowski, 269 F.3d 778, 782 (7th Cir. 2001)). Thus, so long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Under Illinois law, it is illegal for a person to drive while "under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving." See 625 ILCS 5/11–501(a)(4). For this section to apply, the person must be driving or in actual control of the vehicle. Id. 5/11–501(a). In this case, the facts and circumstances known to Officers at the time of initial contact with Plaintiff plainly support that Plaintiff was in actual control of the van, (see People v. Morris, 2014 IL App (1st) 130512, ¶¶ 28-30, 16 N.E.3d 269, 273; City of Naperville v. Watson, 175 Ill. 2d 399, 402, 677 N.E.2d 955, 957 (1997) (collecting cases)), and a reasonable belief that Plaintiff either had committed or was committing a crime. See Washington, 481 F.3d at 547; see also Gates, 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules"); Watson, 175 Ill. 2d at 404, 677 N.E.2d at 958 ("An intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of his vehicle at any time while still intoxicated.").

"To sustain a conviction of DUI, the State must prove that a defendant was in actual physical control of a car while he or she was under the influence of alcohol." People v. Tatera, 2018 Ill. App. 2d 160207, 103 N.E. 3d 1059 (citing People v. Phillips, 2015 Ill. App. 131147, 44 N.E. 3d 422). It is not necessary for an officer to witness a defendant actually driving the car for the defendant to have "actual physical control" of the car. See Morris, 2014 Ill. App. 130512, 16

11

N.E. 3d 269, 276-77. The Morris Court found that the defendant was in actual physical control of the vehicle when he was asleep behind the wheel and had the keys to the car in his right hand. Id. (explaining that the issue of actual physical control is determined on a case-by-case basis, giving consideration to whether the defendant: (1) possessed the ignition key; (2) had the physical capability to operate the vehicle; (3) was sitting in the driver's seat; and (4) was alone with the doors locked).

The Court has reviewed the dashcam video-audio recording (Dkt. 28, Ex. B)—that includes the events leading up to Plaintiff being awoken by the officers, the police administering the field sobriety test, and Plaintiff being placed under arrest. The Court is convinced that no reasonable jury could find for Plaintiff given his encounter with the police, clearly depicted in the video. The video evidence contradicts Plaintiff's account; therefore, the Court will not accept his version of what transpired for purposes of summary judgment. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); see also Williams, 809 F.3d at 942 ("When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape."). Furthermore, Plaintiff has not identified a genuine issue of material fact; "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

As explained in detail below, Plaintiff has failed to show that there is a genuine dispute as to any outcome-determinative facts, and Defendants are entitled to judgment as a matter of law.

As the Defendants argue, the uncontradicted evidence illustrates that they established reasonable suspicion and subsequently probable cause that Plaintiff had committed a crime. The video evidence clearly shows the initial interaction when the police officers approached the parked while van acting in a community caretaking function, the interaction with Plaintiff (which precipitated a field sobriety test), and Plaintiff being placed under arrest for driving under the influence. Plaintiff's argument that Officers were acting on a hunch when they administered the field sobriety test is not substantiated by the video evidence. Furthermore, his argument that he was searched without consent is contradicted by the video evidence. Moreover, the video evidence demonstrates that, even without consent (which the police had), the police officers had probable cause to search Plaintiff for evidence of a crime and arrest him. Accordingly, the Court grants Defendants' motion for summary judgment in its entirety.

Defendants rightfully argue that Plaintiff was not seized when they approached him performing their duty as a community caretaker. See People v. Luedemann, 222 Ill.2d 530, 549 (2006) ("[A] police officer does not violate the fourth amendment merely by approaching a person in public to ask questions if the person is willing to listen."); People v. Carlson, 307 Ill.App.3d 77, 80, 240 Ill.Dec. 302, 716 N.E.2d 1249 (1999) ("[A] 'community caretaking' encounter does not involve a "seizure" of the citizen. Thus, the police may question a citizen without triggering fourth amendment protections during a "community caretaking" encounter, so long as the officer does not convey by use of force or a show of authority that compliance with his inquiry is required.") (citations omitted). Further, under the "community caretaking" function, it was lawful for Officers to approach the van and awaken Plaintiff. See Carlson, 307 Ill.App.3d at 80. The fact that the vehicle was in the driveway on Plaintiff's brother's private property is of no consequence here, and Officers acted lawfully when they approached Plaintiff sleeping in the van on private property.

People v. Woodrome, 2013 IL App (4th) 130142, ¶ 24, 996 N.E.2d 1143, 1149 ("[A] driveway on private property, like the entrance to a private home, can be considered a public place."); see also People v. Redman, 386 Ill.App.3d 409, 418, 900 N.E.2d 1146, 1155 (2008) ("An officer may lawfully approach the front door of a residence to conduct an investigation—referred to by many courts as a 'knock and talk'—so long as the officer enters an area impliedly open to the public."). Moreover, the record establishes Plaintiff was in such a state of unconsciousness that the emergency aid exception to the 4th Amendment could have been argued to justify Officers approaching to the car. The United States Supreme Court has recently addressed the gravity and importance of properly aiding someone who is found unconscious. See Mitchell v. Wisconsin, 139 S. Ct. 2525, 2537 (2019) ("Unconsciousness does not just create pressing needs; it is itself a medical emergency."); Michigan v. Fisher, 558 U.S. 45 (2009) (per curiam) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006); People v. Lomax, 2012 IL App (1st) 103016, ¶ 29, 975 N.E.2d 115, 123.).

The undisputed evidence demonstrates that Officers had ample articulable facts to support not only reasonable suspicion but also probable cause to arrest Plaintiff. See Illinois v. Wardlow, 528 U.S. 119, 125 (2000) ("Even in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. Terry recognized that the officers could detain the individuals to resolve the ambiguity.") (citations omitted); United States v. Sokolow, 490 U.S. 1, 7 (1989). After approaching Plaintiff in the van, it took Officer Carney four stringent knocks on the windshield while calling out to Plaintiff to awake him. Before Plaintiff awoke, Officer Carney saw a lit cigarette in his hand and Officer

Beltran observed a clear plastic bag containing pills in plain view resting next to Plaintiff on the middle console of the van. Plaintiff, however, denies the existence of the plastic bag that Officer Beltran asserts he observed.

Even when construing the evidence in his favor, the audio from the dashcam clearly indicates that Plaintiff discussed the plastic bag several times with Officers. Officer Beltran asked Plaintiff what was in the baggie located in the center console, suggesting that it may be vitamins. Plaintiff responded "Vitamin C." Later, Officer Beltran again asked Plaintiff if it was okay for him to check the bag; however, this time Officer Beltran used the word "Ziplock," and did not mention the word vitamins—but Plaintiff did—responding, "You mean the vitamins?" Plaintiff refused to consent to search and insisted that his brother, Pastor Darius Brooks, make the decision to search the church van where Officer Beltran observed the plastic bag.

Plaintiff claims that he was confused about the lines of questioning and said "Vitamin C" in response to an earlier question about medication that he took. When considering all the evidence, particularly Plaintiff's affirmative denial of Officer Beltran's request to search the Ziplock and instead referring Officer Beltran to his brother, no reasonable jury could accept Plaintiff's version that there was not a plastic bag in the van. It would be unreasonable to infer that the plastic bag did not exist when there are several instances captured on the audio-video recording from the dashcam in which the plastic bag was discussed and consent to search it was refused. There is nothing for a jury to do "where the factual record *taken as a whole* could not lead a rational trier of fact to find for the non-moving party." Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 682 (7th Cir. 2014) (emphasis added). Notwithstanding Plaintiff's denial of the bag, the record is rife with evidence that established probable cause for Officers to arrest Plaintiff. In other words,

whether Defendants had probable cause to arrest Plaintiff for DUI does not turn on the existence of a plastic bag.

That said, Plaintiff woke up and told Officer Carney that he was "okay," that he was at his house, and that he was sitting back in his vehicle. All the same, Officer Carney exercised his discretion, lawfully, when he asked Plaintiff to exit the vehicle and provide identification. See New York v. Class, 475 U.S. 106, 115–16 (1986) ("Officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lacked any particularized reason for believing the driver possesses a weapon."); Pennsylvania v. Mimms, 434 U.S. 106, 110–11 (1977) ("We have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile."); Smith v. Ball State Univ., 295 F.3d 763, 770 (7th Cir. 2002) (An "officer who confronts a potentially intoxicated driver must have the discretion—without probable cause—to order the individual out of the vehicle.").

When Plaintiff stepped out of the van, Officer Carney was able to observe that Plaintiff's pupils were pin-point in size. See People v. Yates, 2013 IL App (1st) 121549-U (dilated pupils were a contributing factor in conclusion that sufficient facts supported lawful Terry stop). Officer Carney then asked Plaintiff if the van was a work vehicle because it was registered in Westchester. At this point Plaintiff provided a different answer than he had before and clarified that the van was a church vehicle. Although its weight is determined on a case-by-case basis, this fact is an inconsistent explanation or change in Plaintiff's story, and can be used as a factor in the reasonable suspicion calculus. See, e.g., United States v. Vaughan, 700 F.3d 705, 712 (4th Cir. 2012) (an individual's "changing story remains a valid factor contributing to reasonable suspicion."). That said, Plaintiff provided a form of identification to Officer Carney, but the address on the

identification did not match their current location. Officer Carney continued to investigate. See United States v. Miranda-Sotolongo, 827 F.3d 663, 669 (7th Cir. 2016) ("[I]t would have been poor police work for an experienced officer to give up an investigation of suspicious behavior solely because that behavior might also have an innocent explanation.") (citing Terry, 392 U.S. at 23).

Plaintiff walked to the front of the van and Officer Carney observed Plaintiff having issues walking and with his balance. Plaintiff then confirmed that the house belonged to his brother and the that he was staying with him. Plaintiff denied drinking alcohol that night. Officer Carney asked Plaintiff if he could check his eyes to confirm that he had not been drinking; Plaintiff consented. Defendant Carney asserts that Plaintiff failed the Horizontal Gaze Nastagmus test, a test commonly used a part of an officer's basis that an individual is under the influence. See People v. McKown, 236 Ill. 2d 278, 924 N.E.2d 941, 945 (2010). During the HGN test, Officer Carney can be heard telling Plaintiff that he is looking away from his flashlight and that Plaintiff was unable to follow the flashlight as instructed.

After the HGN test, the Officers asked Plaintiff about his physical condition, and Plaintiff told them that he has a limp because of a knee surgery but should be able to walk a straight line. The police officers asked Plaintiff to perform other field sobriety tests, including the walk and turn test and the one leg standing test. Plaintiff was not able to complete the tests successfully, providing them with additional relevant evidence for determining whether Plaintiff was impaired. See People v. Robinson, 368 Ill.App.3d 963, 983 (2006). Upon request, Plaintiff took a breathalyzer test, which resulted in 0.00 BAC. However, before the breathalyzer test was administered, Plaintiff told the officers that he had a history of drug abuse and that he had previously used heroin, cocaine, and marijuana.

17

Plaintiff was searched, during which he disclosed he had a pocket knife on him. While being searched, Officer Beltran discussed the Ziplock bag. Plaintiff declined to allow Officer Beltran to search the van (where the Ziplock bag was located), instead telling him to speak with his brother. Then Officers asked him if he believed that he was okay to drive. Plaintiff responded: "Absolutely." Officer Carney then asked him how he believed he did on the field sobriety tests. Plaintiff said he was nervous. Officer Carney then informed Plaintiff that based on his test performances he was being arrested for DUI.

On March 28, 2017, the DuPage County Grand Jury issued a true bill indicting Plaintiff under 720 ILCS 570/402(c), knowingly possessed less than fifteen grams of a substance containing heroin. Dkt. 37, Ex. 8. "Under Illinois law, a grand jury indictment is *prima facie* evidence of probable cause." Swearnigen–El v. Cook County Sheriff's Dept., 602 F.3d 852, 863 (7th Cir. 2010).

Thus, after reviewing all the evidence, the Court concludes that the Officers' belief that there was probable cause was reasonable after reviewing the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Furthermore, the inferences Plaintiff makes from his own account of the interaction do not undercut the evidence in the record. See DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987) (a court is not required to draw every conceivable inference; it should draw only reasonable inferences). Accordingly, Plaintiff's arrest for driving under the influence was supported by probable cause. Plaintiff, therefore, cannot establish a claim for unlawful arrest, malicious prosecution (see Mustafa, 442 F.3d 544, 547), or indemnification, because probable cause existed. Patrick v. Mathews, No. 16-CV-10118, 2017 WL 1739935, at *4 (N.D. Ill. May 4, 2017). Accordingly, judgment is entered on all claims in favor of Defendants.

## IV. CONCLUSION

For the reasons stated, judgment is entered in Defendants' favor on all claims. Civil case terminated.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 18, 2019